IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DERICK DEAN | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:23-cv-1131-PX |
| WAL-MART STORES, INC., | * | |
| | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending in this employment discrimination action is Defendant Wal-Mart Stores Inc.'s ("Walmart") motion to dismiss the Complaint. ECF No. 6. The matter has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to dismiss is GRANTED in part and DENIED in part.

**I.   Background**

The Court takes the Complaint facts as true and most favorably to Plaintiff Derick Dean. For eight years, Dean worked as a customer host for Walmart. *Id.* ¶ 9. He had an exemplary employment record. *Id.* He often worked with another customer host, James Kent. *Id.* ¶ 13. Dean is Black and Kent is white. *Id.* ¶¶ 5, 13.

On May 31, 2022, Dean questioned whether Kent had verified that a customer possessed proof for a purchase. ECF No. 1-1. Kent screamed at Dean that Kent knew how to do his job. *Id.* Kent also grabbed his own crotch while yelling "make me shut up!" and "you are below me." *Id.* Kent threatened to "break both [Dean's] legs" and to "fuck [him] up bad!" ECF No. 1 ¶ 15; *see also* ECF No. 1-1. Kent next pointed at Dean and yelled "I could buy and sell mother

fuckers like you!"  ECF No. 1 ¶ 16; *see also* ECF No. 1-1.  Kent continued that Dean was "nothing to me, matter of fact he's below me!"  ECF No. 1 ¶ 17.

After the incident, Walmart Asset Protection Associate, Jose Perea, submitted a written recitation of events although it is not clear to whom Perea reported the incident.  ECF No. 1 ¶ 20; *see* ECF No. 1-1.  Evidently, Perea also had video footage of the events as did the store security system, but unnamed Walmart personnel did not review the footage "with the sound on."[1]  ECF No. 1 ¶¶ 25–27; *see* ECF No. 1-1.

Dean also reported the incident to his supervisors, Walmart's "Ethics Board," and the human resources department.  ECF No. 1 ¶¶ 22, 75.  Walmart took no action against Kent.  *Id.* ¶ 22.  In fact, Walmart personnel "downplayed the incident and said, James is just a talker."  *Id.* ¶ 29.  Dean, however, was removed from his location in the store and was assigned less favorable tasks outside his position like washing windows and cleaning up the store.  *Id.* ¶¶ 31, 45.  Dean was given no additional pay or benefits for these assignments.  *Id.* ¶¶ 30–31, 45.

Although Dean avers that Kent's "harassment, racial slurs, threats and assault continued" unabated for nearly a year, he gives few details.  *Id.* ¶¶ 34, 42.  On July 1, 2022, Dean complained again about Kent's continued harassment.  *Id.* ¶ 40; ECF No. 1-2.  In that complaint, Dean describes a very similar encounter to the May 31st exchange, but the Court cannot tell whether Dean is recounting the events of May 31st or a new event.  *Id.*

On September 18, 2022, Dean filed a formal charge of discrimination (the "Charge") with the Equal Opportunity Employment Commission ("EEOC").  ECF Nos. 1-3, 1-4.  As the basis of discrimination, Dean checked the boxes marked "race," "color" and "other;" but he offered no detail as to what "other" represented, even though the form required the complainant

---

[1] Dean sues solely Walmart, yet he repeatedly refers to unnamed "Defendants" taking certain actions.

to "specify" when marking the "other" box. *Id.* In the narrative section, Dean wrote that on May 31, 2022, he was "threaten [sic] by James which is another . . . Customer Host." *Id.* Dean goes on to describe the encounter as follows:

> On the job [Kent] came over to me say he would break both my legs. That he would fuck me up so bad. He said I was below him pointing his finger in my face. Say he buy and sell mother fucker like me. I filled out complained with ethics they came out there was a video of the whole thing. The put James back to work saying write up was just cussing of sales floor the video was taken but it had no sound. They never came to talk to me about anything they only talk to James. I have video with sound. They came to talk to me Ethics. Did nothing put him back to work. He thin[ks] he can say anything he want to me. I feel very uncomfortable around him not knowing what he might do.
>
> *Id.*

On February 2, 2023, the EEOC issued Dean a right to sue letter. ECF No. 1 ¶ 41. Dean filed suit in this Court on April 27, 2023, alleging against Walmart six counts: (1) race and color discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-2; (2) sexual harassment in violation of Title VII; (3) common law workplace assault and harassment; (4) retaliation; (5) negligent supervision and retention; and (6) intentional infliction of emotional distress. ECF No. 1.[2] Walmart now moves to dismiss all claims on several grounds. ECF No. 6. The Court will address each in turn.

## II.     Standard of Review

When reviewing a motion brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018). However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context." *Ashcroft v. Iqbal*,

---

[2] The numbering of counts in the Complaint are a jumble: the claims jump from Count I to IV (missing II and III) and includes *three* Count V's. *Id.* Finding no coherence to the Complaint's numbering system, the Court will instead refer to each count by its separate short title and in the order in which Walmart argues for dismissal.

556 U.S. 662, 686 (2009). Nor can courts "accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements."). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### III.  Title VII Claims

#### A.  Failure to Exhaust Administrative Remedies (sexual harassment and retaliation claims)

Walmart first contends that Dean failed to exhaust Title VII administrative remedies for the sexual harassment and retaliation allegations. ECF No. 6-1 at 5–7. Before a civil claim may proceed in this Court, it must be raised in the formal charge. *See Jones v. Calvert Grp.*, 551 F.3d 297, 300 (4th Cir. 2009), *abrogated on other grounds by Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843 (2019) (holding that failure to exhaust is not jurisdictional). A claim is sufficiently raised and preserved if the formal charge provides reason for the EEOC to perform a reasonable investigation into the allegations that eventually become the subject of the civil suit. *See Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 132 (4th Cir. 2002) (quoting *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 491 (4th Cir. 1981)); *compare Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) (reasonable investigation of discrete incidents in the formal EEOC charge would not have led to discovering a "continuous pattern" of long-term harassment from

co-workers) *with Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247–48 (4th Cir. 2000) (holding plaintiff exhausted administrative remedies when complaint and administrative charge both pleaded management retaliated against her because she complained about her supervisor's sexual harassment).  The exhaustion analysis is confined to the formal charge itself.  *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 408 (4th Cir. 2013).

When construing the Charge most favorably to Dean, he has not exhausted the sexual harassment claim.  On the Charge form, Dean did not check the box marked "sex;" and the description of events makes no mention of any conduct that suggests Dean was harassed on account of his sex.  *See* ECF Nos. 1-3, 1-4.  Even if the Court gives the Charge the most liberal construction and infers that the referenced video includes Kent grabbing his own crotch, the Court is hard-pressed to see how that gesture alone would reasonably give rise to a sexual harassment investigation.  *See Bryant*, 288 F.3d at 132.  Accordingly, the sexual harassment count must be dismissed for failure to exhaust administrative remedies.

The retaliation claim is trickier.  To preserve a retaliation claim, the charge must make plausible that: (1) the plaintiff engaged in a protected activity; (2) the employer took an adverse action against the plaintiff; and (3) a causal relationship exists between the two.  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 213 (4th Cir. 2019).  An employee's "general complaints of unfair treatment are not protected activity."  *Bowman v. Balt. City Bd. of Sch. Comm'rs.*, 173 F. Supp. 3d 242, 248 (D. Md. 2016).  Only those complaints that "communicate 'a belief that the employer has engaged in . . . a form of employment discrimination' based on a protected class" are actionable.  *Chang Lim v. Azar*, 310 F. Supp. 3d 588, 604 (D. Md. 2018) (quoting *Crawford v. Metro. Gov't of Nashville and Davidson Cty.*, 555 U.S. 271, 276 (2009) (citation omitted)).

Exhaustion of a retaliation claim is only required where the retaliatory conduct predates the filing of the formal charge. *See Laster v. NAI, The Michael Cos.*, No. TDC-18-3200, 2019 WL 3208060 (D. Md. July 16, 2019). If the retaliatory action stems from the filing of the charge itself, then obviously, the claim need not be described in the formal charge to be actionable. *Jones*, 551 F.3d at 302 ("a claim of 'retaliation for the filing of an EEOC charge as discrimination' is indeed 'like or reasonably related to and **growing out of** such allegations.'" (emphasis in original) (quoting *Nealon v. Stone*, 958 F.2d 584, 590 (4th Cir. 1992)).

The Charge makes no mention of any retaliatory action on Walmart's part. Nor is the "retaliation" box checked. *See* ECF Nos. 1-3, 1-4. Further, the Complaint alleges only one specific complaint that Dean had submitted on July 1, 2022, which predated the filing of the Charge. *See* ECF No. 1 ¶¶ 40, 76; ECF No. 1-2. Thus, Dean has not exhausted any retaliation claim predicated on conduct occurring prior to the Charge.

Perhaps recognizing as much, Dean confines his retaliation argument to Walmart's conduct that post-dated the Charge. *See* ECF No. 1 ¶ 77. But nothing in the Complaint makes plausible what Walmart did anything to Dean in retaliation for filing the Charge. *See* ECF No. 1. Sure, the Complaint avers that Walmart reassigned Dean to harder work with no additional compensation. *See* ECF No. 1 ¶ 77. But the order of events in the Complaint is so vague and nonspecific that the Court cannot plausibly infer when Walmart reassigned Dean. Thus, the reallocation of Dean's job duties cannot be plausibly connected to Dean's filing of the Charge, and so the claim must be dismissed.

### B. Race and Color Discrimination – Hostile Work Environment

The Court turns next to Dean's discrimination claim. Race-based discrimination is actionable when an employer "discriminate[s] against any individual with respect to

compensation, terms, conditions, or privileges of employment . . . ." 42 U.S.C. § 2000e–2(a)(1). One way the employer violates Title VII is to require "an African-American employee to work in a racially hostile environment." *Boyer-Liberto v. Fontainbleu Corp.*, 786 F.3d 266, 277 (4th Cir. 2015). A hostile environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 298 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (internal quotation marks omitted). A racially hostile workplace is one in which the employee experiences unwelcome race-based conduct that is "sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment and is imputable to the employer." *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011) (alteration and internal quotation marks omitted).

Where, as here, the alleged harasser is a co-worker, "the employer is only liable if it was negligent in controlling [the] working conditions." *Boyer-Liberto*, 786 F.3d at 278 (citation omitted). The employer's negligence is made plausible where some facts reflect that the employer "knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003) (en banc) (citations omitted).

Although the Complaint facts are thin, Dean makes plausible this claim. Dean alleges that Kent unleashed on Dean a slew of physical threats laced with racist commentary about "buying and selling" his people. *See* ECF No. 1 ¶¶ 14–19. Further, the Complaint avers that for some time, Kent would "regularly scream racial profanities" at Dean such that Dean feared for his life and his safety. *See id.* ¶¶ 23, 34, 39, 42, 45, 69. Although light on detail, at the pleading stage, the Complaint avers a sufficient pattern of racially charged behavior that altered the terms

and conditions of Dean's employment.  *See Boyer-Liberto*, 786 F.3d at 277.  Further, Dean repeatedly complained about Kent's mistreatment to his direct supervisor, human resources, the "ethics" department, all to no avail.  *See* ECF No. 1 ¶¶ 22, 27–29, 35–37, 40, 75, 76.  Accordingly, the Complaint makes plausible that Walmart knew or should have known that Kent was creating a racially hostile work environment and failed to take any corrective action.  *See Ocheltree*, 335 F.3d at 333–34.  Thus, this theory of discrimination survives challenge.

However, to the extent Dean intends to aver that Walmart treated him adversely on account of his race, the claim fails.  As the cause of action is poorly pleaded, Dean may be trying to press that Walmart treated him disparately as compared to Kent in response to Kent's offensive behavior.  *See* ECF No. 1 ¶ 45.  To make plausible a disparate treatment claim, a plaintiff must minimally make a prima facie showing that he is a member of a protected class who was satisfying his employer's legitimate employment expectations when he suffered an adverse employment action, and that his employer treated similarly situated employees outside the protected class more favorably.  *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010); *Hill v. Lockheed Martin Logistics, Mgmt., Inc.,* 354 F.3d 277, 285 (4th Cir. 2004).  An "adverse employment action" must affect "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits."  *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)).

Dean appears to allege that when compared to Kent, Walmart treated Dean more harshly by reassigning him to harder and more menial tasks, and then incessantly "micromanaging" him.  *See* ECF No. 1 ¶ 45.  But as pleaded, Dean describes this job change as retaliatory—Walmart's

answer for Dean having complained about Kent.  *See id.*  ¶ 45L & M ("After Plaintiff made complaints against James Kent, Plaintiff was then removed from his position and required to do additional and more difficult tasks.").  But as to a disparate treatment claim, no facts make plausible that Walmart changed Dean's job because Dean is Black.  Although at the pleading stage, the prima facie burden is not onerous, the manner in which Dean collapses multiple liability theories in one count renders it impossible to determine whether this claim is adequately pleaded.  Thus, the Court dismisses the discrimination claim based on a disparate treatment theory.

The Court next turns to the state common law claims.

### IV.     Common Law Claims

#### A.  Preemption by the MWCA

Walmart next contends that Dean's common law claims for assault and negligent supervision and retention fail because they are pre-empted by the Maryland Workers Compensation Act ("MWCA"), Md. Code Ann., Labor & Empl. § 9-101 *et seq*.  ECF No. 6-1 at 7–9.  Although the MWCA's comprehensive statutory scheme is aimed at providing "sure and certain relief for injured workmen, their families and dependents regardless of questions of fault," *Petty v. Major & City Council of Baltimore City*, 232 Md. App. 116, 123 (2017) (quoting *Hastings v. Mechalske*, 336 Md. 663, 672 (1994)), the statute does not bar all claims against an employer.  *See Robinson v. DarCars of New Carrolton, Inc.*, No. DKC 11-2569, 2012 WL 993405, at *5 (D. Md. Mar. 22, 2012).  Where, as here, a state common law claim could have been brought prior to the enactment of the MWCA, the claim is not preempted.  *See id.* ("a plaintiff may bring negligence claims based on statutorily proscribed behavior if an independent cause of action under common law would have existed prior to enactment of the statute.") (citing *Ruffin Hotel Corp. of Md. Inc. v. Gaspar*, 418 Md. 594, 617 (2011) ("We reject the proposition

9

that the General Assembly intended that the Workers' Compensation Commission is the exclusive forum in which a negligent hiring/retention claim must be litigated whenever such a claim is asserted by an employee against his or her employer as a result of intentional and unlawful misconduct of a fellow employee. A contrary conclusion would be unreasonable in the extreme."))[3]

The negligent retention claim is based on Walmart's decision to keep Kent on as an employee even after his having assaulted Dean. *See* ECF No. 1 ¶¶ 30, 36, 45K & L.  Perea reported on May 31st that Kent screamed he would break Dean's legs. *See* ECF No. 1-1 ("I will cripple that other fucking leg.").  Kent also threatened to "fuck [Dean] up so bad!" *See* ECF No. 1 ¶ 15; *see also* ECF No. 1-1.  Walmart supervisors, in response, did nothing to rectify this volatile situation.  Kent stayed in his current position, and consequently, "continued to threaten and harass" Dean on the job. *See* ECF No. 1 ¶¶ 34–35.  This is precisely the kind of common law claim not preempted by the MWCA. *E.g., Austin v. Safeway,* No. PJM 18-0922, 2019 WL 1057364, at *4 (D. Md. Mar. 5, 2019) (citation omitted) ("negligent retention and supervision claim is not preempted when the underlying conduct is based, at least partially, on an independent common law cause of action such as assault and battery."); *Brower v. AT&T Mobility Servs., LLC*, No. RDB-18-2207, 2018 WL 4854168, at *4 (D. Md. Oct. 5, 2018).  Thus, the motion to dismiss the common law assault and negligent retention claims on this basis is denied.

### B. Assault

Walmart separately challenges the sufficiency of the assault claim, arguing that no facts permit imputation of Kent's assaultive conduct onto Walmart as the employer.  ECF No. 6-1 at

---

[3] It is not lost on the Court that Walmart cites almost exclusively cases that predate *Ruffin*. *See* ECF No. 6-1 at 7–8.

14–15.  Dean pursues a respondeat superior theory of liability, averring that Walmart is liable for Kent's actions as its agent or servant.  ECF No. 1 ¶ 7.  From this, Walmart argues the claim must be dismissed because no facts make plausible that Kent's assaultive conduct had been within the scope of Kent's employment.  ECF No. 6-1 at 14–15.  For the following reasons, the Court agrees.

At common law, an employer is liable for the tortious acts of its employee when conducted within the scope of employment.  *Jones v. Family Health Centers of Balt. Inc.,* 135 F. Supp. 3d 372, 382 (D. Md. 2015).  Acts are deemed within the scope of employment when they are "in furtherance of the employer's business and authorized by the employer." *Id.* (quoting *Tall v. Bd. of Sch. Comm'rs.,* 12 Md. App. 236, 251 (Md. App. Ct. 1998)); *see also Sawyer v. Humphries,* 322 Md. 247, 255 (1991).  Authorization need not be express; where the employee's tortious acts fall within the "same general nature" as work performed for the employer, authorization may be inferred.  *Davis v. Complete Auto Recovery Servs., Inc.*, 2020 WL 4041128, No. JKB-16-3017, at *2–3 (D. Md. Jul. 17, 2020), *aff'd*, No. 20-1851, 2022 WL 17038956 (4th Cir. Nov. 17, 2022).

However, where an "employee's actions are *personal* or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests," those acts remain outside the scope even if undertaken during business hours and on the employer's property.  *Sawyer,* 322 Md. at 256–57 (emphasis added).  Or if the employee's conduct is "unusual," "unprovoked" or "outrageous," the conduct will likely not be within the scope of employment.  *Id.*  Although scope of employment determinations generally are for the jury, where undisputed facts allow for only one inference, the Court may decide the question as a matter of law.  *See Tall,* 120 Md. App. at 260.

11

The Complaint describes that Kent accosted Dean, screaming obscenities, and threatening to break his legs. *See* ECF No. 1 ¶¶ 14–19. Kent also ranted about having bought and sold Dean's "people." *See id.* Both men were evidently employed as customer service representatives. *See id.* ¶¶ 10, 45L. So, while Walmart's alleged inaction in disciplining Kent in the face of continued similar misconduct may suggest some degree of "authorization," no set of alleged facts would make plausible that such conduct furthered Walmart's business interests. *See Jones*, 135 F. Supp. 3d at 382. Thus, while Dean may have sufficiently pleaded an assault claim against *Kent*, the same claim cannot proceed against *Walmart* on a respondeat superior theory of liability. The assault count is dismissed.

### C. Intentional Infliction of Emotional Distress

Walmart lastly contends that the Complaint fails to plead sufficiently aggravating misconduct to make plausible an intentional infliction of emotional distress ("IIED") claim. ECF No.6-1 at 16–17. IIED claims are reserved for only the most shocking circumstances where a defendant's extreme and outrageous acts cause the plaintiff severe emotional distress. *Tavakoli-Nouri v. State*, 139 Md. App. 716, 728 (2001). The claim survives challenge "sparingly and only for opprobrious behavior that includes truly outrageous conduct." *Savage v. Mayor & City Council of Salisbury*, No. CCB-08-3200, 2010 WL 3038953, at *6 (D. Md. July 30, 2010) (citation omitted). In those rare instances, the Complaint facts must make plausible that the plaintiff "suffered a severely disabling emotional response to the defendant's conduct, and that the distress was so severe that no reasonable man could be expected to endure it." *Thacker v. City of Hyattsville*, 135 Md. App. 268, 315 (2000) (internal marks and citation omitted). This standard sets a high bar. S*ee B.N.S. by Stuart v. Brito,* No. ELH-17-2670, 2018 WL 5830565, at *10 (D. Md. Nov. 6, 2018). Accordingly, Maryland courts routinely reject "conclusory

statements of emotional distress" without demonstrably severe injury as insufficient for an IIED claim. *Karn v. PTS of Am.*, LLC, No. GJH-16-3261, 2017 WL 4162251, at *5 (D. Md. Sept. 19, 2017).

Read most favorably to Dean, the Complaint highlights Kent's prolonged and repeated offensive behavior combined with Walmart's inaction. *See* ECF No. 1 ¶¶ 14–19, 21, 34, 93–97. The Complaint next asserts, with no real detail, that these events "caused him to suffer personal injuries, embarrassment, loss of sleep, humiliation, fear, mental anguish and other general damages." *See id.* ¶ 98. Broad generalizations of categorical injuries come nowhere close to satisfying the demanding requirements of an IIED claim. Accordingly, this count, too, is dismissed.

In sum, the Court dismisses all claims save for the Title VII hostile work environment claim and the negligent retention and supervision claim. The Court next turns to whether dismissal should be with or without prejudice.

## V.     Dismissal With or Without Prejudice

The Court retains discretion in determining whether claims should be dismissed with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice. *See Glover v. Loan Science, LLC*, No. 8:19-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)). However, when the claims suffer from legal defects that make the claims unamendable, dismissal with prejudice is warranted. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

As for the sexual harassment and retaliation claims based on conduct predating the Charge, the claims are dismissed with prejudice for failure to exhaust administrative remedies.[4] Likewise, the assault claim is dismissed with prejudice because no set of facts could make plausible that Kent's assaultive acts were in furtherance of Walmart's business. *See Jones,* 135 F. Supp. at 382.

As for the IIED claim, given the grave generalities that plague this Complaint, Dean theoretically could add facts to make the claim plausible. This counsels in favor of dismissal without prejudice. That said, Dean is cautioned that just because he is free to amend does not mean he should. The claim is little more than a repackaged discrimination or negligent retention claim. But because the claim is dismissed on sufficiency grounds, dismissal will be without prejudice.

## VI.  Conclusion

Based on the foregoing, Walmart's motion to dismiss is granted in part and denied in part. Within 21 days from the date of this Opinion and Order, Dean shall file an amended complaint that complies with this Court's local rules. *See* Loc. R. 103.6. Walmart shall have 14 days from the date of the filing of the amended complaint to answer or otherwise respond. Should Dean fail to file an amended complaint by such time, the original Complaint will be dismissed with prejudice and without further notice. A separate Order follows.

| | |
|---|---|
| January 22, 2024 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |

---

[4] Even if Dean wanted to amend the Charge or file a new one to include conduct predating September 2022, the time for doing so has passed. *See* 42 U.S.C. § 2000e-5(e)(1).